**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

# Motion to vacate void and illegal judgments and application for collateral relief under F.R.C.P. 60(b)

*When considering the filings of a pro se party like Bukstel, the Court must*

*"liberally construe his pleadings" and "apply the applicable law, irrespective of whether [he] has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).*

I, Cristina Mirela Dumitrascu, acting in Pro Se, motion to vacate void and illegal judgments, and for collateral relief under F.R.C.P. 60(b). I submit that from inception In RE: Marriage of Dumitrascu ["Dumitrascu"] was never a legitimate case in Oklahoma; that to this date it is void of jurisdiction, and devolved by fraud and illegal procedures for extra-judicial purposes: to remove me as an impediment to the sale of our house, and, as an instrument for criminal extortion, to terrorize a mother back to Oklahoma with her children, by deprivation of property, money and support, that has placed two infants at risk of health and life. The state appellate judges used the force of illegally assumed authority to establish artificial jurisdictional links on an international level, with a view to empowering the trial court to summon us back to Oklahoma for a second attempt to decide all issues locally, including custody of the children.

*Adopted in 1980, the Hague Convention on the Civil Aspects of International Child Abduction ["Convention"] is intended to prevent "the use of force to establish artificial jurisdictional links on an international level, with a view to obtaining custody of a child." Elisa Perez-Vera, Explanatory Report 11, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982) ["Perez-Vera Report"].*

## Argument I: Based on Rule 1.200(b)(1) and (b)(2) the opinion is not a memorandum and should have been published.

The appellate opinion is more than simply the law of my case. Chief Judge William J.

Holloway Jr.'s opinion In re Rules of the U.S. Court of Appeals for the Tenth Circuit, 955 F.2d

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

36, (10th Cir.1992) regarding unpublished opinions in federal courts, applies equally to

unpublished opinion in state courts. The memorandum opinion qualifies to be published because:

**[1]it establishes new rules of law or alters or modifies existing rules:**

[a] it dispenses with the required process under 43 O.S. §102 to establish residency; illegally granting "nunc pro tunc" subject matter jurisdiction for a petition for dissolution, - and on that authority confirms the dissolution of the marriage; and leaves standing all orders prior to the trial;

[b] it finds the mandatory notice and service required by the Convention, was met by publication, on the ground that an address for the mother could not be found – all the while noting the filing in the same court, a month earlier, of a OKDHS petition by the mother for child support;

[c] it finds that a state district court in violation of Article II, Section 7 , and Article II Section 25 of the Oklahoma Constitution; violation of the 14th Amendment "due process" protections, and whose subject matter jurisdiction is questioned, is still in full constitutional authority and jurisdiction to resume process in a new trial;

[d] it implies that the cumulative effect of: (1) failure by the trial judge to recuse upon written request; (2) his active obstruction of the appeal process; (3) a petition for writ to the Oklahoma Court of Criminal Appeals for interference with a criminal process;(4) criticism directed at the judge in all my briefs; (5) filing with the Council on Judicial Complaints for bias, disability and incompetence - does not yet meet the "Caperton" test for constitutionally intolerable bias (See CAPERTON •556 U.S. 868, 890 (2009)- and remands the case to the same trial judge, rejecting the 12 O.S.§140 request; ;

[e] it dispenses with the foreign country, the Convention and any federal law that could address the case, and offers an alternative under Oklahoma law: the return of the missing parent and the children to Oklahoma; acceptance of personal and subject matter jurisdiction; mutual restraining orders; travel costs, and legal guardian and an attorney for the children. A decision on all pertinent issues, including custody, would be doable in one hearing;

[f] three and a half years after separation of the family - possibly based on legal or equitable estoppel, finds authority for the district court to restart the 1-year limitation period for the Convention's return procedures. My repeated and unsuccessful attempts to bring attention to the holding in Lozano v. Montoya Alvarez, 134 S. Ct. 1224 (2014)(Also in Casetext), on the 1-year limitation period in the Convention, can only lead to the conclusion that the appellate judges concerned are simply not interested in Justice Thomas or Justice Alito's opinions on the Convention;

[g] it finds legal ground for an ICARA process for the return of the children to be done by the Oklahoma state court, thereby co-opting the Convention country where the children are

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

resident;

[h] probably looking to authority in 12 O.S.§20(D)(2), it supports forum shopping when foreign law would be the alternative;

[i] it finds that the absence of independent counsel for deprived children in an action to terminate parental rights, and the absence at trial of the attorney requested by the mother, issues found to be reversible error under MATTER OF GUARDIANSHIP OF S.A.W•1993 OK 95, 290 (Okla. 1993),  IN RE ADOPTION OF F.R.F•1994 OKCIVAPP 9, 802 (Okla. Crim. App. 1994,where Bobby Ramsey was the appellant's attorney)) and IN THE MATTER OF S.S. v. STATE 2004 OK CIV APP 33 (Okla. Civ. App. 2004), are in *Dumitrascu* harmless error, requiring only a reminder for future process;

[j] in a child custody contest between states, in which necessary expenses are incurred by, or on behalf of the party (43 O.S.§551-312), and where attorneys in the competing states are unlikely to be licensed in Oklahoma, Judge P. Thomas Thornbrugh holds that a prevailing mother will not recover attorney fees she is contracted to pay back, because the party that expended hours and expenses on her behalf, is not an attorney licensed in Oklahoma;

[k] Chief Justice John Reif modifies 43 O. S.§551-312 to deny recovery of court costs by holding, on the basis of 12 O.S.§ 978, that for recovery of costs in divorce proceedings, the prevailing party must also prevail on the dissolution aspect of the petition. For a respondent that requires a denial of the divorce;

[l] the mandate from the Court Of Civil Appeals and from the Oklahoma Supreme Court ["appellate courts"] is antagonistic to the legislative intent in 12 O.S. §20(G), as it violates an international agreement to which the United States is a party.

**[2]It involves legal issues of continuing public interest.**

In a period that has seen a declaration of sovereignty, the demise of the 'Save Our State Amendment" and the enactment of 12 O.S.§20 addressing foreign law, this case presents legal issues of continuing public interest. Unfortunate for us that the appellate judges seems more motivated to protect the trial judge from liability, while accommodating political influences in Delaware County, than by a wish to see justice done to a mother and two children abandoned abroad. The two appellate judges, betraying their judicial oath, seem willing to war against the Constitution of the United States, the federal courts, the Oklahoma Constitution and Legislature.

4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu

# Argument II: Relief under Rule 60(b)(1)for fundamental misconception of law.

The father and his attorneys ask the  federal district court to return the case to the state district court so that, under illegally granted jurisdiction, it can proceed upon the appellate mandate to further violation of the Convention.

### Motion under Rule 60(b)(1) is within reasonable time

There is no important issue of finality, and no prejudice to another litigant.  The appellate judges called for a new trial, thus obviating any interest of finality in the case. There is no prejudice to Ionel Samuel Dumitrascu ["Father"], who continues to be held harmless from any child support payments; and continues to have possession and use of all family assets in Oklahoma. The appellate courts, denied me any recovery whether of fees or costs, fully tilting the equities in favor of a father who, three and one half years in arrears with child support obligations, is deemed, by operation of Oklahoma's criminal law, to be a felon. (See 21 O.S.§851, 852, 853). It was necessary for me to seek more financial help , and the attorney assisting me moved to another country which delayed his assistance.

### This Court can grant relief for fundamental misconception of law and substantive errors.

*Relief has been granted under 60(b)(1) on a theory of mistake of law in some instances. E. g., Lairsey v. Advance Abrasives Co., 542 F.2d 928, 929 (5th Cir.); Rocky Mountain Tool Machine Co. v. Tecon Corp., supra, 371 F.2d at 597."*

In reviewing Security Mutual Casualty Security Company v. Century Casualty Company ( 621 F.2d 1062 (10th Cir. 1980)) at 30. (also in Casetext), attorney Curtis R. Fraiser states:

*On appeal, the Tenth Circuit adopted the Fifth Circuit's liberal view of rule 60(b) (1). Under the liberal view "mistake" includes judicial errors, and the timeliness*

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

*of a motion is always determined by application of a reasonableness standard with a one year limitation being the only absolute deadline. This means that the court may relieve a party from a final judgment for reason of a fundamental judicial error even if the thirty or sixty day period for timely appeal has expired.'The Tenth Circuit, in considering Century's rule 60(b)(1) motion after the time for appeal had expired, joins the Fifth Circuit in rejecting the view of many commentators,' and federal jurisdictions,that allowance of such relief after expiration of the deadline for appeal destroys judicial finality and makes rule 60(b)(1) a substitute for timely appeal. The Tenth Circuit also rejected the view that relief is not available for a fundamental misconception of law after the time for appeal has expired.*

See Curtis R. Fraiser, <u>Civil Procedure--The Availability of Relief from a Final Judgment for Reason of Judicial Mistake of Law under Rule 60(b)(1) of the Federal Rules of Civil Procedure , Tulsa Law Review,</u> Vol. 16 [1980], Iss. 2, Art. 9.

### This Court has power granted by Congress to vacate state orders that contravene The Hague Convention.

The appellate judges exceeded their authority: to grant subject matter jurisdiction of the status of the marriage; to mandate a course of action for custody determination that contravenes jurisdictional requirements of the Convention, and that would replace the international treaty by a state process of their choice. If the appellate judges intended to avoid foreign law and accommodate a state district court, they were also willing to ignore the clear legislative intent in 12 O.S.§20 (G). Understanding the Legislature to mean that there cannot be any judicial holding or order that contravenes the Convention as an international agreement, what remains among the issues that demand federal collateral review is fundamental misconception of law, illegality and bad faith by the state appellate judges.

*It is worth noting that the district court would not be barred by the Rooker-Feldman doctrine from vacating the Superior Court's custodial decree or its order enjoining removal of the children from California.*
****

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

*Because the doctrine is one of congressional intent, not constitutional mandate, it follows that where Congress has specifically granted jurisdiction to the federal courts, the doctrine does not apply. See, e.g., In re Gruntz, 202 F.3d 1074, 1078-79 (9th Cir. 2000) (en banc)*

*In this case, Congress has expressly granted the federal courts jurisdiction to vindicate rights arising under the Convention. See 42 U.S.C. § 11603(a). Thus, federal courts must have the power to vacate state custody determinations and other state court orders that contravene the treaty.*
*( Mozes v.Mozes 239 F.3d 1067 (9th Cir. 2001))*

See also: Doe v. Mann, *415 F.3d 1038, 1043 (9th Cir. 2005)* ''

## There has never been a proper application or petition under the Convention.

In the petition for dissolution the father plead under Oklahoma's UCCJEA and the Federal Parental Kidnapping Prevention Act ["PKPA"], found in 28 USC 1738A . Under 1738A(b)(8) the comity addressed does not apply to foreign states or to Convention members. Jurisdictional connections with Convention members are governed by ICARA. But no reference to ICARA procedures is found in Dumitrascu until the Court of Civil Appeals filed its opinion on 08/27/2015. (Document 1 Filed in USDC ND/OK on 10/02/15 Page 41). Ecuador is a Convention member and Treaty Partner of the USA since April 1, 1992. (also see US Dept.of State). The father has never requested an Ecuadorian court to make a Hague Convention determination, and no court or agency anywhere has done so. Under such circumstances, as discussed in *Silverman* below, no judgment or order of the Oklahoma courts is so far entitled to full faith and credit under §11603(g):

*First, full faith and credit shall be accorded a prior judgment in either state or federal court, but only if the judgment arises through adjudication of a Hague Convention claim in accordance with the dictates of the Convention and ICARA. 42 U.S.C. § 11603(g); see, e.g., Holder v. Holder, 305 F.3d 854, 864 (9th*

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

*Cir.2002)(Also see in Casetext).*

*As earlier noted, neither Robert nor Julie has ever requested any Minnesota court to make Hague Convention or ICARA determinations, and no state court has done so. Thus, the May 4, 2001, order of the Minnesota court is not entitled to full faith and credit under section 11603(g), and the Rooker-Feldman doctrine does not override federal statutory grants of original jurisdiction under ICARA or this court's appellate jurisdiction under section 1291.  (Silverman v. Silverman, 338 F.3d 886 (8th Cir., 2003).)*

**"Habitual residence", the polestar of any ICARA process, was determined as early as August 2012 when we moved to Ecuador.**

That was when the father relocated the entire family to Ecuador. That legal determination was critical to establish which country had the right to have the children present under its jurisdiction. Also critical under Oklahoma law is the issue of whether any parent remained a "bona fide resident" so as to allow filing of a petition for dissolution in October 2012. The ICARA procedures are now found at 22 U.S.C. §§9001-9011. If the appellate judges want the father to begin judicial proceedings under the Convention, such proceedings must be done in accordance with the Convention.(§11603(d). Three other jurisdictional conditions are critical: (1) a civil action must be filed in a court that has jurisdiction of such action; (2) "*which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed*"(§11603(b)), and (3) notice and service is mandatory, in accordance with the applicable law governing notice in interstate child custody proceedings (§11603(c) (See UCCJEA §43-551-108). On condition (2) the state district court had no power to exercise its authority in Ecuador, where the children are located; nor can the state appellate courts grant it such authority now. Nor can the appellate courts extend authority to hale residents of a Convention member to an Oklahoma court for custody determination, thereby co-opting the Convention. On condition (1): for the civil

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

action for dissolution of marriage to be legally filed, that is for the existence of subject matter

jurisdiction over the status of the marriage, there must be no question that the state court has

jurisdiction as required by the constitution or acts of the legislature.(43 O.S §102) That too falls

under a federal court's "*jurisdiction to decide and review issues of congressionally adopted*

*policy and procedure" (Silverman*, supra). That critical concern is encoded in the OK-UCCJEA:

43 O.S.§551-102(6) and §551-107.

On page 9 of the opinion (Document 1 Filed in USDC ND/OK on 10/02/15 Page 41) the

appellate judges acknowledge my claim to a settled intent by both parents to abandon Oklahoma

to make our family's habitual residence in Ecuador , and point to holding in *Mozes* (supra) that

finding of shared intent to abandon a previous residence would support a determination that the

new country is the habitual home of parents and children under the Convention. Oklahoma has its

own case law for determining "*bona fide residency*"(See 43 O.S.§102): The Oklahoma Supreme

Court held the question of residency is:

> *....largely a matter of intention to be determined from facts and circumstances*
> *surrounding the case"( Johnson v. Petty, 1929 OK 304*, 15, 281 P. 276, 279), and
> *"determining the question of domicile of a person seeking a divorce, the*
> *controlling fact is the intention of said party in said respect." (Bixby v. Bixby,*
> *1961 OK 100*, 361 P.2d 1075,1076,1078);and "The question of domicile in an
> *action for divorce is one of fact, to be determined from the evidence in the case.*
> *The controlling fact to be considered is the fact of intention and to determine this*
> *fact the trial court, and this court on appeal, may take into consideration all the*
> *movements, transactions, and attending circumstances of the party or parties*
> *involved in the question.(Pope v. Pope, 116 Okla. 188, 243 P. 962, 963).*

The appellate judges acknowledge I contested jurisdiction of the marriage because the

father had been in Oklahoma less than the six months required for residency, and the children

habitual home was Ecuador. They simply granted subject matter jurisdiction, in spite of my

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

objection and my request for an evidentiary hearing on those issues, ignoring case law that the

objection:

> "*must be considered and decided before any court can move one further step in the cause ....the question is, whether on the case before a court, their action is judicial or extra-judicial; with or without the authority of law, to render a judgment or decree upon the rights of the litigant parties.*" (State of Rhode Island v. Com. of Massachusetts, <u>37 U.S. 657, 718 (1838)</u>)

> *See Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); Joyce v. United States,* <u>474 F.2d 215</u> *(3d Cir. 1973) (noting that though defendant could have raised issue sooner, "[w]here there is no jurisdiction over the subject matter, there is, as well, no discretion to ignore that lack of jurisdiction").* (TRADING CO. OF N. AMERICA v. BRISTOL, (E.D.Pa. 1999)•<u>47 F.Supp.2d 563, 565 (E.D. Pa. 1999)</u>)
> *Also see Melo v. US,* <u>505 F2d 1026</u>.*(noting that once jurisdiction is challenged, the court has no authority to reach merits, but rather should dismiss the action). Stuck v.Board of Medical Examiners* <u>94 Cal.App 2d 751</u> *(noting that once challenged, jurisdiction cannot be assumed, it must be proved to exist). Rosemond v. Lambert,* <u>469 F2d 416</u> *(noting once jurisdiction is challenged, the burden shifts to the court to prove jurisdiction).*

## Facts of our relocation to Ecuador that support a settled intent to leave Oklahoma:

July through August 2012, after talking to missionaries from his local Seventh-day

Adventist community ["SDA"], who had returned from missionary work with the SDA

community in Vilcabamba Ecuador, the father decided we move to that village. He said he was

tired of trucking and wanted to have a garden all year round like in Ecuador, and become a

farmer just like his father in Romania. California was too expensive and Romania too controlled

by the European Union, so it would be better in South America. On 08/27/12 the father's pastor

Jerry Mayes, drove the family to the airport in Tulsa for our flight to Ecuador. On the way the

father asked him to keep an eye on the auction of our house. On 09/21/12, in our hostel room the

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

father spoke of wanting to go back to Oklahoma. He doubted he could ever find a job as a truck driver; knowing no Spanish it was unlikely he could be hired as a missionary with the SDA church, and he was disturbed by the presence of too many Catholics. My position was that it was too soon to give up, barely a month after leaving our home. The conversation degraded quickly to the father calling me and the older boy "evil", a practice that started the last months in Oklahoma, whenever we did not immediately follow his wishes. My complaint that he stop demonizing us by that word, and that perhaps it was he that was evil, triggered a number  of heavy blows across my eyes and face - violence registered evidence of which I made available to DHS and to Legal Aid of OK. The Ecuadorian police ordered him to find another hotel so we did not communicate much. But around 09/25/12 he contacted me for the last time to tell me he heard from pastor Mayes that the auction did not go well, and that the property was pending sale to himself for too low a price. The purchase offer turned out to be for the $20,000 we paid for the empty lot in 2005, plus another $5,000. I never understood that we were giving lay pastor Jerry Mayes legal authority to buy or sell the property. I did not sign any paper giving him that authority. It was months later that I was shown the [Zillow.com page on our house](#). Looking under Price/ Tax History it shows the listing price lowered by 85.7 % and the property was pending sale on 09/26/12. We relied on money from the house to buy a farm to stay permanently in Ecuador. I believe the potential of losing most of the value from our home is what decided the father to take all the money we had, the laptop computer, and return as fast as he could to Oklahoma, without any further attempt to ask me to follow him. His last dare to me was: "let's see how long you last here with no money and two babies". He bet destitution would force me to follow him back.

### 4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu

Legally relevant here is that there is objective evidence of a settled intent to abandon Oklahoma and relocate to Ecuador: the evidence of the attempted sale the property, the sale of the truck and the purchase of one way tickets for all. For all circuits that follow *Mozes* (supra) Ecuador became the habitual home for two infant boys after 08/27/2012. Equally so under the above cited Oklahoma case law on determining a domicile, the objective evidence points to a change of domicile to Ecuador. On that time frame the father could not have met the requirements of 43 O.S.§102 to file a petition for dissolution in Oklahoma by 10/25/12. The law required an evidentiary hearing on the issue when and objection was raised. It is also likely he did not meet the 30 day residency requirement in Delaware County. The father did not return to Oklahoma to reside in Delaware County. The years prior to our departure he usually showed up at the home in Eucha only on the Sabbath, when he was in the area to attend services at his church in Jay OK. I always suspected he lived elsewhere, but was never been able to determine where. One indication is that he lives in Disney, Mayes County. He used a P.O. Box there for his correspondence; and it is in Mayes County that OKDHS served him the child support petition.

## Absence of proper service as required by ICARA(§11603(c) and UCCJEA 43 §551-108) renders all proceedings void.

 *Failure to properly serve a party who resides outside the country under the Hague Convention renders all subsequent proceedings void to that person. (Honda Motor Co. v. Superior Court (1992) 10 Cal.App.4th 1043, 1048 [ 12 Cal.Rptr.2d 861].)  This is true even when the party indisputably had notice of the action. ( Id. at p. 1049; Floveyor International, Ltd. v. Superior Court (1997) 59 Cal.App.4th 789, 794 [ 69 Cal.Rptr.2d 457].)*

Ecuador is not a signatory to the Hague Service Convention. As no statement or reservation by Ecuador has been raised against service by registered mail or personal service,

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

service may be effected through such means that comply with the Federal or Oklahoma rules of

Civil Procedure regarding Service of Process Abroad, as long as it is not against law in Ecuador.

Article 1 of the Hague Service Convention states that the Convention does not apply if the

address of the person to be served is not known. The father served the petitions by publication on

that basis. Yet he admitted on the record being always been in touch by email with me, and by

phone with my family in Canada and Romania (See Document 1 Page 104). I applied for child

support assistance with OKDHS days after he disappeared, and was in email communication with

him and lay pastor Jerry Mayes beginning 10/24/2012 when I and my sister Mihela in Canada

first received an email letter that he was in Oklahoma (Exhibit-1). On 2/27/2013 the father's

attorney in collusion with Judge Barry Denney and the OKDHS attorney Susa Kerr Hopper

managed to "dismiss/settle" without my knowledge the child support petition served on the father

(Document 1 Page 249). The father's attorney then amended the petition for dissolution with facts

in my child support petition and without authorization proceeded to serve by publication, again

intent to secure a default judgment without my interference.  But the basis for publication was

false and illegal.

> *Given the purposes behind the enactment and ratification of the treaty, we conclude the only reasonable construction of the "address of the person to be served ... is not known" clause in Article 1 is that the Hague Convention "does not apply to situations in which the whereabouts of the defendant cannot be ascertained despite reasonable diligence. " ( People v. Parcel No. 056–500–09 (1997) 58 Cal.App.4th 120, 125, 68 Cal.Rptr.2d 51, italics added.)*

> *Quoted in Lebel v. Mai— (2012) 210 CA4th 1154, 1161-1162, 148 CR3d 892, 898-899 (also noting no effort was made to determine defendant's residential, business or other mailing address despite having an e-mail address and overseas phone number)*

4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu

## The mandate by the appellate courts further contravenes the Convention by validating the state TRO and emergency orders

The appellate courts' mandate further contravenes The Hague Conventions by:

[1] legitimizing emergency orders and TRO that violate 43 O.S. §551-204, since the children were not present in Oklahoma at any point in the proceedings, and that violate ICARA §11604(a), as the Oklahoma court lacked jurisdiction under §11603(b). With the TRO and emergency orders related to the children, the only cognizable legal effect is the usurpation of Ecuador's treaty right to the protection of the children under Article 5(1) of the Convention of 19 October 1996 On Jurisdiction., Applicable Law, Recognition And Enforcement And Cooperation In Respect Of Parental Responsibility And Measures For The Protection Of Children.

Judge Thornbrugh on page 9 of the opinion cites Application of McCullough on Behalf of McCullough (4 F. Supp.2d 411 (W.D. Pa. 1998), in support of the district order to return the kids. That is inapposite and deceitful. In issuing his Order and Warrant Of Arrest Judge Smith in *McCullough* was in proper jurisdiction over the children then present and living in Pennsylvania. That position in *Dumitrascu* would correspond to a court in Ecuador, had the father filed a proper ICARA case and application for the return of the children within the 1-year limitation period. One of the elements required for an emergency order is the presence of the children in the jurisdiction. Nor can an order for arrest be based on refusal to return from a Convention country for custody process in Oklahoma, without jurisdiction having been first declined by the residency country.

[2] Having, for the purpose of handing the case back to the trial court, illegally extended jurisdiction for divorce and custody determination, the appellate courts also chose to ignore the

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

mandatory gathering of facts needed to address my repeated "inconvenient forum" claims. These

venue concerns are found in Article 8 and 9 of the Convention of 19 October (supra). They are

also encoded in UCCJEA §43-551-207 to make an evidentiary hearing mandatory, with

information submitted by the parties, with consideration to be given to all relevant factors,

including the listed factors, chief among them the presence of domestic violence.(See Legal

Resources Center on Violence Against Women: Domestic Violence and the UCCJEA starting at

slide 44. And on violence as an obstacle to the return of the children: Hague Convention and

Allegation of Violence  and A Child's Return and the Presence of Domestic Violence.)  While the

presence of domestic violence is the most important and determining factor; the appellate judges

also ignored that  a mother and two infants faced a 6000 miles round trip; that all records and all

witnesses are in Ecuador, with the trial court refusing any production of that evidence unless

proffered in person in the courtroom.  From the outset the appellate judges have been keen to

accommodate the interest and wishes of a judge and other parties in Jay Oklahoma, with no

visible concern for a mother and children abandoned and living on charity in a foreign country.


## In their mandate the appellate courts assumed power to authorize a district court to openly violate state law and superior federal law

Judge P. Thomas Thornbrugh and Chief Justice John Reif, acting in excess of their

authority and as trespassers upon the law (ELLIOTT ET AL. v. PEIRSOL ET AL•26 U.S. 328,

340 (1828), ordered the Delaware District Court to engage in legal process contravening the

Convention: an international agreement enacted by the U.S. Congress as the law of the land in

ICARA, and thus superior to state law on the matters at issue. Their mandates are equally in

violation of the legislative directive and intent of the Oklahoma Legislature in  12 O.S.§20(G)).

4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu

Whether their actions be treason, is for the courts and the legislature to decide (U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia,  19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821).

.

## Legal Aid lawyer James Evenson acted against  my authority to compromise my case and failed to appear at the trial after he was fired by the agency.

It is my knowledge and belief that Evenson was pushed on me by the SDA community in Jay in collaboration with church members of Vilcabamba Ecuador, and came requested by Judge Barry Denney. He suppressed officially notarized documents of domestic violence required by the Ecuadorian government, and never brought up the issue of child abuse. I allowed him to continue representation at trial at Judge Denney's insistence, and in return for phone participation at trial, but he failed to appear when he was fired by Legal Aid of OK. .

## Argument III: Relief from the judgment of the trial court for fraud under Rule 60(b)(3).

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

## Fraud on the court is met under *Tobel* and *De Saracho.*

The less rigorous required showing for (b)(3) adopted by some circuits [See Tobel v. City of Hammond (7th Cir. 1996) 94 F3d 360, 362 ; De Saracho v. Custom Food Machinery, Inc. (9th Cir. 2000) 206 F3d 874, 880], takes a simple viewpoint focused on the trial, and does not require evidence of intent to deceive through a deliberate scheme:

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

*"To obtain relief under Rule 60(b)(3), the movant must prove that: (1) the party maintained a meritorious claim (defense) at trial; and (2) because of the fraud, misrepresentation, or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial."*

I  approached a  trial date with a Legal Aid Services lawyer, James Evenson, chosen for me by the SDA community, who admitted incompetence in international law, suppressed critical evidence I sent him, refused any evidence from Ecuador on the ground that local rules deemed them hearsay, and who was expected to try the case without evidence and without clients present. I had serious misgivings about his work and his intentions and acted to dismiss him from the case, hoping to  secure another attorney before trial.. When I phoned the court to ask for a delay in the trial, Judge Denney insisted my best chance at trial was to keep Evenson; and if I agreed he would allow me to participate at the trial over the phone. Under the circumstances I agreed (see my affidavit in Document 1 page 176). I phoned in on the trial date fully expecting Evenson to represent our interest. First thing I heard was that the court was punishing me for refusing to obey, weeks earlier, an order to appear with the children. The promised participation by phone became silent attendance, as I was forbidden to speak at my own trial. The only question I was allowed to answer was for an address where the father was required to serve me with the decree, as a party not present at court. The legal fact is that I was never served with that decree in any manner except by an email copy. In a later call to the Legal Aid office I learned from the new office manager Lacy Klinger that Evenson was fired a few days before the trial, and his manager demoted. She would not give the reason. The judge signed off on the withdrawal three days before the trial, but made no effort to tell me or to change the trial date. Judge Barry Denney  and Bobby C. Ramsey, the father's lawyer, simply arranged to shut me up by finding me in indirect

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

contempt of court, so I would not interfere in the legal charade that formalized the decree.

Ramsey did not think it necessary to tell his past associate at the DA office, and now supposed

friend on the bench, that the charge requires a jury trial and an opportunity to be heard.( Article II

Section 25 of the Oklahoma Constitution)

## Fraud on the court is met under Yapp.

The more rigorous showing starting in Yapp v. Excel Corporation (186 F.3d 1222 (10th

Cir. 1999)and (Casetext)) and explicated in Zurich Northern America v. Matrix (426 F.3d 1281

(10th Cir. 2005) and (Casetext) is applied because already preferred by other panels in the 10th

Circuit and necessitated by the fact courts have allowed claims of fraud on the court to be

brought under (b)(3). Intent to defraud is made an absolute prerequisite for fraud on the court.

*Zurich* holds that::

> *Generally speaking, only the most egregious conduct, such as bribery of a judge*
> *or members of a jury, or the fabrication of evidence by a party in which an*
> *attorney is implicated will constitute a fraud on the court.*

*Zurich* further adopted the requirement in *Yapp* that evidence be provided of an "*intent to*

*deceive or defraud the court by means of a deliberately planned and carefully executed*

*scheme*".

The meeting between the father and pastor Jerry Mayes resulted in him getting the

property back and the assignment to Ramsey to file for divorce, both of which happened

on 10/25/2012. Neither I nor the father knew anything about Judge Denney nor Ramsey

before we left Oklahoma. But Mayes and Judge Denney share a role as lay leaders of

evangelical churches and can be assumed to know each other well. Ramsey is member of

a group of  assistant-DAs who worked with Judge Denney in his days at the DA's office.

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

His intimate knowledge of the judge and the courthouse culture proved perfectly suited to turn the divorce the father wanted into a decree with no delays and with the full cooperation of the judge. A close look at the pleadings, orders and decree show that the bulk of the language was set down at the outset and never changed. The divorce decree refers to the family as residents of Oklahoma for the six months through September 2012; and the children are shown as present in Oklahoma when the decree is signed. I believe Ramsey's plan was to reach a swift default judgment after marking me permanently on the docket and in the mind of the judge as a wife who abducted the children to Ecuador. He served me by publication while at the very same time the father initiated an email interchange with me starting 10/24/2012 and going through the divorce, to include himself, his pastors and my sister in Canada - the object of which was to convince me to return to Eucha with the children. (Exhibit-2). On a request I made in October 2012, OKDHS served the father on 02/25/13 on a child support petition. A newly signed copy of the emergency order by the judge and agreement with another assistant-DA Susa Kerr Hopper, was sufficient to resolve the problem, but not by proper transfer between tribunals required by 43 O.S.§601-306, but by a settlement that did not involve me nor other representative for the children. Since that time the children have received not a dollar of assistance from OKDHS or any other agency whether state or federal. Noting an improper name was used for me in his petition, Ramsey amended it to show my proper name and without authorization from the court simply directed the same deputies clerks who served the father on my petition a few days earlier, to publish an alias service of

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

summons addressed to me as a person that could not be located by diligent search. It was

left for me to discover the existence of the divorce petition when I made a status call to

the secretary at the DHS office. I believe Ramsey prodded Judge Denney to ask me to

keep Evenson, knowing from long association he would play along, as he is shown to

object in the withdrawal motion. I believe that Ramsey discussed the issue again with

Judge Denney when they learned Evenson was fired and could not appear, and they chose

indirect contempt to prevent my actual participation, with testimony that would mess up

his act for a swift validation of the decree. With my silence Ramsey was free to induce the

father to testify that he had never committed domestic violence; and sell the judge the

argument that giving the father sole ownership of a paid for house with a Zillow.com's

market value at the time of $156,000, was an equitable exchange for a sum of $15,000 in

cash; a sum that even the father admitted at trial I had reported missing. Trying to impress

the judge with the reality of domestic violence, and abuse of the older boy, and my fears

of returning to Jay, was like shouting into an empty well. My words did not seem to

register and were of no interest to him. His sole interest was to forcibly repatriate us by

order or by threat. He threatened to give custody to the father and would consider

criminal charges for abducting the children. Evenson's 08/01/13 motion to allow

participation by phone mentioned the domestic violence and my fears. Yet at trial the

judge remembered non-existent prior testimony by the father denying any domestic

violence. It was left to the father during testimony to declare that the "best interest" of the

children was separation from their mother.

## Argument IV: Under (b)(4):both the underlying and the appellate judgment are void.

> *Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A., U.S.C.A. Const. Amend. 5 - U.S. v. BUCK,* 281 F.3d 1336, *1342 (10th Cir. 2002), Margoles v. Johns,* 660 F.2d 291 *(7th Cir. 1981) cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *In re Four Seasons Securities Laws Litigation,* 502 F.2d 834, 841 (10th Cir. 1974), *cert. denied,* 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1975);GSCHWIND v. CESSNA AIRCRAFT CO, 232 F.3d 1342 (10th Cir. 2000) holds that a Rule 60(b) (4) motion attacking judgment as void is not subject to any time limitation"

### The underlying judgment meets the voidness test in *Four Seasons*

The trial court never concerned itself with my complaints about the lack of jurisdiction of the marriage. It relied on fraudulent service by publication where appropriate service is required under the Convention, with consequent lack of personal jurisdiction. And the appellate opinion established the trial court acted in a manner inconsistent with due process.

### The appellate judgment meets the voidness test in *Gschwind* and *Honda Motor Co*.

The appellate judges did not bother to call for an evidentiary hearing on the issues of residency so as to establish subject matter jurisdiction. In violation of Oklahoma law, they chose instead to exceed their authority and establish by judicial fiat a presumption that subject matter jurisdiction existed. Then they issued orders contravening the Convention. They ignored the legislature and wrongfully extended their power beyond the scope of their authority (GSCHWIND supra at **1345**). In addition they made no effort to review the validity of service of the divorce petition by publication, where an acceptable method was in fact available through diligent inquiry with the father, his pastors and through the attorneys for OKDHS - sources

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

intentionally ignored by attorney Ramsey. As held in Honda Motor Co. (supra) the failure of proper service under the Convention renders all subsequent proceedings, including the appellate opinion, void.

## Both the underlying and appellate judgment are void for lack of proper service under the Convention:

See the argument under (b)(1) above

# Argument V: The relevance of institutional reform in (b)(5).

I mention this section because it "*serves a particularly important function in "institutional reform litigation*," (Horne v. Flores, U.S. Supreme Court· 557 U.S. 433, 2585 (2009)). I ask the Court to also take judicial notice of attorney Mark Kelly's Yale Law Journal article: Saving 60(b)(5): The Future of Institutional Reform Litigation

This Court has a  duty to protect the rights of all citizens of Delaware and Ottawa Counties from abuse of civil rights guaranteed by the United States Constitution, by any individuals or agencies acting under color of state authority. And the Court is also aware of the special responsibility of care and protection owed by treaty, custom and tradition towards the American Indian Nations and Tribes that form a substantial proportion of the population in those counties. I submit that an investigation is warranted to determine if judgments were obtained by fraud and through the degradation and corruption in Delaware County of the *machinery of justice* (BULLOCH v. UNITED STATES•763 F.2d 1115, 1121 (10th Cir. 1985),  caused mainly by the surrender of judicial power by the associate district judge to the Grove prosecutors.

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

## Coram non judice: The constitutionally intolerable absence of a proper judicial function in Delaware County.

When I filed the petition in errors I was sufficiently concerned by my experience with Judge Barry Denney and the institutional dysfunction at the Jay courthouse to ask the Oklahoma Supreme Court to retain the case, which was denied. I tried again with a Petition for a Writ of Mandate and that was denied as well (Exhibit 3). I placed a complaint with the Council on Judicial Complaints, only to get an unresponsive letter deflecting the complaint to the Court of Civil Appeals (Exhibit-4). I tried to get child support by criminal prosecution denied by Ken Wright, the present DA of Ottawa and Delaware Counties, and got deflected again to the Court of Civil Appeals, even though the complaint was about a criminal matter. My Petition for Writ to the Court of Criminal Appeal sits ignored for nearly a year, likely another victim of undue political influence (Doc 1, 10/02/15 Page 70).

I now know that mine was not an isolated case. Like the Angelo parent before me I had been caught in a longstanding conspiracy by prosecutors living in Grove OK, initially aimed at criminal defendants, that as evidenced in my 2013 trial, have by now totally usurped the judicial function proper to an associate district judge. They have created a legal system that does not answer to established evidentiary rules or the rules of court of the Oklahoma Supreme Court; that shuns review by the Court of Criminal Appeals, and as evidenced in *Angelo* and *Dumitrascu* do not concern themselves with ethical rules or due process rights. As I allege in my forthcoming complaint in torts, this group consist of prosecutors who worked as assistant-DAs during Judge Denney's tenure in that office, and are fellow residents in Grove OK, acting illegally like a Grove star chamber. After they and spouses benefited from years of preferential assignments, they

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

responded to Judge Denney's gradual surrender of judicial power, whether for incompetence, disability or inclination, by assuming his role to benefit them and their legal projects, taking particular care to avoid review by the Court of Criminal Appeals. To our misfortune most found some reason to act illegally in our case. There will not be fair trials for the accused, or justice for others, in Delaware or Ottawa Counties, unless and until there is radical institutional reform, that first takes into account the non-existence of a properly functioning judicial authority in Delaware County.

## Argument VI: Relief for fraud on the court and independent action under (b)(6).

I include by reference all applicable arguments made in the prior sections, *since the substance of the plea should control and not the label* (*Buck* supra at 1342). I submit that it would be *a grave miscarriage of justice* (United States v. Beggerly, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998); accord Pickford v. Talbott, 225 U.S. 651, 657, 32 S.Ct. 687, 56 L.Ed. 1240 (1912)) and *manifestly unconscionable* (Barrett, 840 F.2d at 1263) to allow this case to continue for any purpose, by remand to a state court with questionable subject matter jurisdiction, with proven violation of due process, abuse of discretion and violation of the Convention - and now a court that is commanded by appellate Judge P. Thomas Thornbrugh and Chief Justice John Reif to repeat, in an even more open and offensive manner, violations of the Convention and new violations of our rights under the Constitution and international law.

I submit that the appellate opinion and mandate is a fraud on the federal courts and on us. While making specious reference to concurrent jurisdiction and ICARA, the mandate is clearly

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

intended to ignore the required adherence to the Convention in favor of local handling, by deceiving, cowing or starving us to return. My obedience to the mandate would make any federal review unnecessary.  Chief Justice Reif did not have to rely on an illegal dissolution of the marriage to deny us the recovery of a few dollars in costs. Any honest review of the opinion shows we did not prevail in any meaningful way. The mandate brings us back through three years of suffering to another beginning; again to be haled illegally back to face Judge Denney and attorney Ramsey, now buttressed by appellate support. The appellate finding of denial of due process and abuse of discretion was not in vindication of our due process rights, but the pretext to cloak civil and criminal violations, by carefully excising a farcical and criminal trial by a judge without jurisdiction. It is clear the appellate courts are committed to return us to the district court, and for that purpose the opinion was carefully tailored not to impinge on subject matter jurisdiction and on court orders preceding the trial. Judge Thornbrugh introduced the false assumption of jurisdiction by an act in excess of his authority, by purporting to validate the dissolution of the marriage in a case of disputed subject matter jurisdicion; and leave in place orders that could be used to seize my children if I ever showed up. And he was supported in fraud and deception by Chief Justice Reif.

I submit that a central question in *Dumitrascu* is whether foreign nations can rely on the United States Government and the United States Congress to be reliable partners, able to deliver on obligations assumed in treaties and agreements; and whether the federal judiciary has the power and the will to enforce performance of those agreements, against the growing tendency of politicized judiciaries in various states, to impose their independentist views on anything they see

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

as foreign law or foreign involvement.

The *temple of justice* was defiled long ago in Delaware County (UNIVERSAL OIL CO. v. ROOT RFG. CO•328 U.S. 575, 580 (1946)). What else can explain the conduct of attorney Kathy Lungren Baker, a past assistant-DA and best known family and criminal defense lawyer in the county, and a person that sits weekly in evangelical fellowship and on church boards with Judge Denney; and the conduct of attorney Tommy R. Dyer, appellate lawyer and associate with attorney Ramsey at the local firm of Davis & Thompson. My trial's transcript shows these officers of the court present in the courtroom, not surprised at anything unusual in the illegal and criminal spectacle before them of: violation of Article II Section 25 of the Oklahoma Constitution, the shredding of due process and of basic civil rights, illegal deprivation of property, and violation of substantive due process rights of parenthood, guaranteed by laws and constitutions, happening to a mother and two infants nowhere present nor represented.

The *temple of justice* was not only defiled but relocated in the *Angelo* case, (Exhibit-5)- where a father banged his head in vain at the doors of the Jay courthouse for over eight years to rescue his two children from physical and psychological abuse, only to find his rights and those of his children where probably determined in a religious space where the judge, the mother of the children: Mekala Angelo now Smith, and her attorney Kathy Lungren Baker, serve together as leaders at an evangelical church.(Exhibit-6). Judge Denney assigned attorney Christianna Lincoln Wright, wife of then assistant-DA and now DA Ken Wright, as guardian of the children in apparent violation of 10A O.S.§1-4-306(A)(2.a). She was found to share conflicting interests with the mother, and her refusal to stay recused led to a complaint with the Oklahoma Bar. It took

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

eight years for Judge Barry Denney to recuse citing that: "Circumstances are of such a nature as to cause doubt as to Judge's partiality, bias or prejudice."

Beginning  2012 when Dumitrascu was filed in the state district court, to the present situation , it should be evident to any honest judge not corrupted by election and political motives, that *there is a usurpation or corruption of official power by the private litigant or a surrender of judicial power to the private litigant in such a way that the independence of the enforcing officer has been compromised to a significant degree (Lugar v. Edmondson Oil Co 457 U.S. 922, 926 (1982))( See in Casetext at 926).* Attorney Ramsey used and abused Judge Barry Denney like a puppet he led through illegal acts and procedures, errors of constitutional magnitude, and into criminal behavior. Far from the superlative of "*temple*", it should be difficult to conceive of a normal American courthouse in Jay OK. An associate district judge that has surrendered his judicial power to Grove prosecutors, is found in my case to be more pro-active in usurpation of the administrative functions of the Court Clerk.

The defilement of the adversarial trial system is made evident by the Court Of Criminal Appeals's review of the verdict in Gene Douglas Graham, Delaware County case F-2013-1199 (Exhibit 7), where judge, prosecution and defense, by act or omission, worked together to convict the accused to a 25 year term, only to get reversed - eventually leaving Graham a free man.

I submit that until such time as able and independent judicial function is restored to Delaware County –  for all appearances in whatever role by the Grove conspirators in matters presided by Judge Barry Denney, the federal courts ought to find that they usurp the judicial function, and therefore act under color of state law, as state actors, answerable to civil and

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

criminal federal laws, among which:*42 USC 1983* and *18 U.S.C. § 242 (2016)*, - for *the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.*

I appeal to this Court to use *the inherent power of a federal court to investigate whether a judgment was obtained by fraud* .(Hazel-Atlas Co. v. Hartford Empire Co., 322 U. S. 238) in the divorce and in the appellate courts. I ask that if *the court finds after a proper hearing that fraud has been practiced upon it, or that the very temple of justice has been defiled (*Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575 (1946)), the entire cost of the proceedings be justly assessed against the guilty parties, and that "*for dominating reasons of justice*" the Court assess counsel fees as part of the taxable costs.(Sprague v. Ticonic National Bank, 307 U. S. 161, 307 U. S. 167).

Since 2012 the Oklahoma state courts  have prevented me from presenting any evidence on my behalf. I trust this Court's indulgence in allowing two extra pages to this motion Respectfully submitted:

s/Cristina Mirela Dumitrascu

**Cristina Mirela Dumitrascu, Defendant Pro Se**
Signed: 08/05/2016
c/o Fiorentino Law Office
P.O. Box 530
Belvedere-Tiburon, CA 94920-2366
Telephone in California (415) 472-2519
email: cristina-dumitrascu@lexsophia.com

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

# Table of Contents

Motion to vacate void and illegal judgments and application for collateral relief under F.R.C.P. 60(b)...........................................................................................................................................1

Argument I: Based on Rule 1.200(b)(1) and (b)(2) the opinion is not a memorandum and should have been published...........................................................................................................................1

    [1]it establishes new rules of law or alters or modifies existing rules:....................................2

    [2]It involves legal issues of continuing public interest.........................................................3

Argument II: Relief under Rule 60(b)(1)for fundamental misconception of law............................4

    Motion under Rule 60(b)(1) is within reasonable time ..............................................................4

    This Court can grant relief for fundamental misconception of law and substantive errors.........4

    This Court has power granted by Congress to vacate state orders that contravene The Hague Convention.....................................................................................................................................5

        There has never been a proper application or petition under the Convention........................6

        "Habitual residence", the polestar of any ICARA process, was determined as early as August 2012 when we moved to Ecuador........................................................................................7

        Facts of our relocation to Ecuador that support a settled intent to leave Oklahoma: ............9

        Absence of proper service as required by ICARA(§11603(c) and UCCJEA 43 §551-108) renders all proceedings void.........................................................................................................11

        The mandate by the appellate courts further contravenes the Convention by validating the state TRO and emergency orders.................................................................................................13

        In their mandate the appellate courts assumed power to authorize a district court to openly violate state and superior federal law.............................................................................................14

        Legal Aid lawyer James Evenson acted against  my authority to compromise my case and failed to appear at the trial after he was fired by the agency.................................................15

Argument III: Relief from the judgment of the trial court for fraud under Rule 60(b)(3).............15

    Fraud on the court is met under Tobel and De Saracho.........................................................15

    Fraud on the court is met under Yapp.......................................................................................17

Argument IV: Under (b)(4):both the underlying and the appellate judgment are void.................20

    The underlying judgment meets the voidness test in Four Seasons .....................................20

    The appellate judgment meets the voidness test in Gschwind and Honda Motor Co...........20

    Both the underlying and appellate judgment are void for lack of proper service under the Convention:...................................................................................................................................21

Argument V: The relevance of institutional reform in (b)(5).......................................................21

    Coram non judice: The constitutionally intolerable absence of a proper judicial function in Delaware County............................................................................................................................22

Argument VI: Relief for fraud on the court and independent action under (b)(6)........................23

4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu

# Alphabetical Index

Application of McCullough on Behalf of McCullough (4 F. Supp.2d 411 (W.D. Pa. 1998..........13
Barrett..............................................................................................................................23
Bixby v. Bixby.....................................................................................................................8
BULLOCH v. UNITED STATES.......................................................................................21
CAPERTON........................................................................................................................2
Cohens v. Virginia............................................................................................................15
De Saracho v. Custom Food Machinery, Inc.....................................................................15
Dluhos v. Strasberg.............................................................................................................1
Doe v. Mann.......................................................................................................................6
ELLIOTT ET AL. v. PEIRSOL ET AL...............................................................................14
Floveyor International, Ltd. v. Superior Court..................................................................11
GSCHWIND v. CESSNA AIRCRAFT CO........................................................................20
Hazel-Atlas Co. v. Hartford Empire Co............................................................................27
Holder v. Holder..................................................................................................................6
Honda Motor Co. v. Superior Court..................................................................................11
Horne v. Flores..................................................................................................................21
IN RE ADOPTION OF F.R.F.............................................................................................3
In re Four Seasons Securities Laws Litigation...................................................................20
In re Gruntz.........................................................................................................................6
In re Rules of the U.S. Court of Appeals for the Tenth Circuit.........................................1
IN THE MATTER OF S.S. v. STATE.................................................................................3
Johnson v. Petty,.................................................................................................................8
Joyce v. United States..........................................................................................................9
Lairsey v. Advance Abrasives Co........................................................................................4
Lebel v. Mai.......................................................................................................................12
Lozano v. Montoya Alvarez.................................................................................................2
Lugar v. Edmondson Oil Co..............................................................................................26
Margoles v. Johns..............................................................................................................20
MATTER OF GUARDIANSHIP OF S.A.W.......................................................................3
Melo v. US...........................................................................................................................9
Mozes v.Mozes....................................................................................................................6
People v. Parcel No. 056–500–09.......................................................................................12
Pickford v. Talbott.............................................................................................................23
Pope v. Pope........................................................................................................................8
Rocky Mountain Tool Machine Co. v. Tecon Corp............................................................4
Rosemond v. Lambert...........................................................................................................9
Security Mutual Casualty Security Company v. Century Casualty Company.....................4

**4:15-cv-00561-JED-FHM Dumitrascu v. Dumitrascu**

Silverman v. Silverman.................................................................................................7
Sprague v. Ticonic National Bank.............................................................................27
State of Rhode Island v. Com. of Massachusetts.........................................................9
Stuck v.Board of Medical Examiners...........................................................................9
Tobel v. City of Hammond.........................................................................................15
TRADING CO. OF N. AMERICA v. BRISTOL.........................................................9
U.S. v. BUCK.............................................................................................................20
U.S. v. Will................................................................................................................15
United States v. Beggerly...........................................................................................23
UNIVERSAL OIL CO. v. ROOT RFG. CO...............................................................24
Universal Oil Products Co. v. Root Refining Co........................................................27
Yapp v. Excel Corporation.........................................................................................17
Zurich Northern America v. Matrix...........................................................................17