**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IONEL SAMUEL DUMITRASCU, | ) | |
| | ) | |
| Petitioner / Plaintiff, | ) | |
| | ) | Case No. 15-CV-561-JED-FHM |
| v. | ) | |
| | ) | |
| CRISTINA MIRELA DUMISTRASCU, | ) | (Delaware County District Court |
| | ) | Case No. FD-2012-00263) |
| Respondent / Defendant. | ) | |

**ORDER**

**I.     The State Court Domestic Relations Action**

This action involves removal of a domestic relations case from the District Court of Delaware County, Oklahoma. Cristina Mirela Dumitrascu (Mother), the respondent in that action, filed a Notice of Removal to this Court. (Doc. 1).  The papers she has filed have not succinctly presented any argument for this Court's exercise of subject matter jurisdiction.  Though her filings have been largely unhelpful in framing the issues, the Court has read the hundreds of pages of materials submitted with the Notice of Removal in an effort to determine whether or not this matter should be remanded.

According to attachments to her Notice of Removal, the parties were married in Lugoj, Romania on June 24, 2005, and they subsequently resided in Delaware County, Oklahoma for some years.  Both of the parties are United States citizens.  They have two minor children, born in Delaware County in 2010 and 2011.  Mother is now in Ecuador with the children, while Mr. Dumitrascu (Father) is in Delaware County.  There is a dispute between the parties as to whether they had a purpose or intent to move to Ecuador, or whether they merely went to Ecuador for a short time, with the intent to return to their Oklahoma residence.  Mother alleges that she, Father, and their children left Oklahoma on August 27, 2012 and were thereafter in Ecuador until

September 2012. She has asserted that, on September 20, 2012, Father "repeatedly struck [Mother], requiring medical care and police intervention." (Doc. 1 at 220). Mother also alleged that, after the beating, Father disappeared, and she subsequently received a letter, dated October 24, 2012, in which Father purportedly stated that he had left Ecuador and "returned to Oklahoma because he was scared by the police intervention." (*Id.*).

The domestic action, Delaware County Case No. FD-2012-263, was filed by Father on October 25, 2012. Mother appeared in that case, through counsel, on May 7, 2013 (Doc. 1 at 274), and filed an Answer to Amended Petition on May 28, 2013. (*Id.* at 275). In that Answer, Mother admitted that "Oklahoma is the 'home state' of the parties' minor children," and that the state court had jurisdiction to hear and determine issues regarding custody, visitation, and support. (*See id.* at 267-268, 274-275). However, she denied that the children resided in Delaware County until September 2012, as she alleged that they had been in Ecuador since August 2012. (*Id.* at 275).

The Delaware County court scheduled a hearing and ordered Mother to return to Oklahoma with the two children to participate in the hearing. After she refused to do so, the court entered an order of dissolution of the marriage on September 20, 2013, awarding Father custody of the children and a property distribution that was unfavorable to Mother. (Doc. 1 at 149-156). Mother appealed the district court's rulings to the Oklahoma Court of Civil Appeals (OCCA). On August 27, 2015, OCCA issued a decision that the district court had violated Mother's due process rights in conducting proceedings in which she was essentially prevented from participation unless she were to return with the children from Ecuador. OCCA remanded for further proceedings.

**II.     Mother's Removal of the State Court Action**

Mother's Notice of Removal was filed on October 2, 2015. While it is difficult to determine Mother's precise argument for this Court's involvement, it appears that she removed

this action premised on her contention that the state district court lacked jurisdiction to make any custody determination. She references the Hague Convention on the Civil Aspects of International Child Abduction, as implemented in International Child Abduction Remedies Act (ICARA). At the same time, she asserts that no proceeding has ever been initiated under ICARA, and Father's counsel has acknowledged that to be the case (*see, e.g.*, Doc. 22 at 7-8). Mother also asserts that this Court has diversity jurisdiction, apparently based on her disagreement with the Delaware County court's marital property division, which OCCA also reversed.

ICARA identifies the procedure for initiating a civil petition for the return of children under the Hague Convention:

> (b)   Petitions
>
> Any person seeking to initiate judicial proceedings under the [Hague] Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by *filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.* . . .
>
> (d)   Determination of case
>
> The court in which an action is brought under subsection (b) of this section decide the case in accordance with the Convention.

22 U.S.C. § 9003(b), (d) (emphasis added). Federal courts have original jurisdiction concurrent with the state courts over "actions arising under the Convention." 22 U.S.C. § 9003(a). But Mother alleges that no such proceeding has been initiated, and Father concedes that "[a] determination that the children are wrongfully retained in Ecuador still must be presented in an application filed with either the Central Authority of the United States or the Central Authority of Ecuador pursuant to Article 8 of the [Hague] Convention. . . ." (*See* Doc. 22 at 7-8).

3

Moreover, as Father notes, Article 17 of the Hague Convention does not preclude the state district court from making findings in relation to a custody proceeding. That Article provides that "[t]he sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention." ICARA also provides that the Hague "Convention and this chapter empower courts in the United States to determine only rights under the Convention and *not the merits of any underlying child custody claims*." 22 U.S.C. § 9001(b)(4). Mother was advised of this interplay between custody and proceedings under the Convention in September 2013 by the United States Central Authority. (*See* Doc. 1 at 163-164). In the absence of a proceeding initiated under ICARA, this Court would have no jurisdiction under ICARA. And, as noted below, even if there were a basis for the Court to exercise federal question or diversity jurisdiction in this matter, Mother's removal is untimely.

### III.   Motion to Remand

Father moves to remand to the state court, based upon the untimeliness of Mother's removal filing. In her Notice of Removal, filed on October 2, 2015, Mother alleged that this Court has both federal question and diversity jurisdiction. Applicable time constraints determine the timeliness of her removal:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .
>
> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise,

4

> of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(1), (3). Also, to the extent premised upon alleged diversity jurisdiction, the case "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.*, § 1446(c)(1).

Mother did not remove this case within *any* of the statutory times. Her Notice of Removal was filed (1) more than three years after the Father initiated the underlying action, (2) more than two years after Mother had notice of the suit, appeared through counsel, and filed an Answer to the Amended Petition, (3) more than two years after the Delaware County court entered the adverse ruling on September 20, 2013, and (4) more than 30 days after OCCA's decision was received at the address she designated for receipt of court filings. (*See* Doc. 1 at 49, 105, 121; *id.* at 2 (acknowledging that the OCCA opinion "was received by mail at the Fairfax CA office [address which she identified as her address for receipt of court papers] on 8/31/2015")).

Mother acknowledges that the "case stated in the initial pleading was removable" (Doc. 16 at 3), but she argues that she did not receive proper service or notice of the domestic relations action until months later, in 2013 (*see id.*). Notwithstanding her argument, it is undisputed that she received notice and appeared in that suit, which she asserts was removable at inception, no later than May 2013, over two years before she removed the action to this Court. Even assuming that the action was not removable at the time of her receipt of the divorce and custody petition (filed in 2012) or the amended petition (filed in 2013), the Delaware County court's orders between May and September 2013 would have given her notice of any removable issue as much as the 2015 OCCA opinion on the appeal from those orders. Instead of removing the case at the time of the

5

Delaware County rulings, she availed herself of the state court appeal's process, in which she largely prevailed.

In attempting to salvage the timeliness of removal, Mother characterizes OCCA's decision as first injecting the Hague Convention or ICARA, but the papers submitted with her Notice of Removal dispel that argument. For example, in a submission to the Delaware County district court, Mother recognized that the first time that court "assumed concurrent jurisdiction under Oklahoma, federal, and international laws that relate to the abduction and retention of the children" was on March 13, 2013. (Doc. 1 at 172-173) (signed 7/27/14). In addition, Mother's Brief in Chief on appeal to OCCA, which she signed on July 28, 2014, referenced the Hague Convention and habitual residence. (*Id.* at 121, 123, 124).

Even assuming the OCCA decision provided her some new notice of removability, Mother's removal still was untimely, as she did not file removal papers within 30 days of receipt of that decision. She acknowledges receipt of the OCCA decision on August 31, 2015, but her Notice of Removal was not filed until 32 days later, on October 2, 2015. Mother now argues that she deposited her removal in the mail on September 29, 2015 – one day before the 30-day removal deadline – and that the Notice of Removal was thus timely "filed" on the date she deposited it in the mail. (*See* Doc. 16 at 4). But it is well-established that depositing a paper in the mail does not constitute filing under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(d)(2)(A) ("A paper is filed by delivering it: to the clerk"); *Snyder v. Snyder*, 139 F.3d 912, 1998 WL 58175 (10th Cir. 1998) (unpublished) ("Plaintiff does not dispute that the district court did not receive his objections until February 19, but he contends that they should be deemed timely filed because he mailed them before February 10. Mailing, however, does not constitute 'filing' under the Federal Rules of Civil Procedure."); *Rosas v. Berry Plastics (Pliant LLC)*, 649 F. App'x 3, 4 (2d Cir. 2016)

6

(unpublished) ("The date of mailing is irrelevant because filing is complete only when papers are delivered into the custody of the clerk."); *Kareem v. F.D.I.C.*, 811 F. Supp. 2d 279, 282 (D.D.C. 2011) (Unless the filer is a prisoner, "the filing date is the date on which the motion was received, not the date on which the motion was sent"), *aff'd*, 482 F. App'x 594 (D.C. Cir. 2012) (unpublished) ("Appellant is not entitled to the benefits of the 'mailbox rule' because he is not a prisoner."), *cert. denied*, 134 S. Ct. 276 (2013); *United States v. Doyle*, 854 F.2d 771, 773 (5th Cir. 1988) (in a civil action, "[n]o . . . provision is made in the rules for accomplishing filing with a district clerk by mailing or receipt of mail. The rules contemplate that filing with a district clerk can only be accomplished by proof of the physical delivery of the document").

Based on the foregoing, the Notice of Removal was untimely under 28 U.S.C. § 1446. If, as Mother argues in her briefing, the state court action was removable from its inception but she did not at that time receive notice of it, then she was still required to remove it within 30 days of her receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). The record and her own admissions establish that she appeared and answered by May 2013 and, assuming she did not receive a copy of either the initial petition or the amended petition until then, her removal of the action must have been accomplished by no later than 30 days after such receipt.

In addition, to the extent premised on alleged diversity jurisdiction, the case "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.*, § 1446(c)(1). While Mother has alleged actions that would constitute bad faith on the part of Father, the record she has provided does not establish that any action of Father prevented her from

removing the case within one year of its inception on October 25, 2012. By her own admission, she learned of the case in 2013 after the filing of the Amended Petition, and she appeared and answered through counsel in May 2013. After the state court issued adverse orders in September 2013, Mother appealed to the state appellate courts. Those actions belie any claim that Mother was unaware of her rights or prevented from taking any action within 1 year of the inception of the case in October 2012. She appeared in both the Oklahoma district court and appellate courts within that one-year time frame.

Because the Court has determined that this matter was not timely removed, the Court need not address Father's additional arguments for removal.

### IV.    Conclusion

For the reasons set forth above, Father's Motion to Remand (Doc. 7) is **granted**. The Court Clerk is directed to **remand** this action to the District Court for Delaware County, Oklahoma. As a result of this remand order, plaintiff's motion to vacate (Doc. 20) is **moot**.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE